# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHELLE A. BARNES,  
    Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

Case No. 1:12-cv-529

Beckwith, J.  
Litkovitz, M.J.

**REPORT AND**  
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's memorandum

in opposition (Doc. 19), and plaintiff's reply memorandum (Doc. 20).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in September 2008, alleging disability since

April 15, 2005, due to diabetes, hypertension, asthma, depression, and heart problems.[1] (Tr.

115). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ)

Gregory G. Kenyon. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing. On January 27, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff subsequently amended the alleged onset date to June 28, 2008. (Tr. 1019).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ acknowledged that prior to the instant applications, plaintiff had filed applications for DIB and SSI on April 15, 2005, alleging disability beginning April 15, 2005. (Tr. 19). Following a hearing on the previous applications, the ALJ had issued a decision dated June 27, 2008, finding plaintiff had the RFC to perform sedentary work in a relatively clean air environment without excessive exposure to dust, gases, fumes, smoke, or temperature extremes. (Tr. 37-49). Upon consideration of the present applications and all of the evidence of record, the ALJ determined that although new and material evidence existed, it did not warrant a finding that plaintiff has been under a disability since June 28, 2008, the amended alleged onset date. (Tr. 20, citing *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); Social Security Ruling 98-04(6); *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990); Social Security Ruling 98-3(6))[2].

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

---

[2] Under these provisions, Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined unless certain conditions are met. *See* AR 98-4(6) ("When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . ."). 1998 WL 283902, at *3.

1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2010, but not thereafter.

2. The [plaintiff] has not engaged in substantial gainful activity since June 28, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative joint disease of the knees; lumbar spine degenerative disc disease; residuals of a right rotator cuff tear; cardiac arrhythmia; diabetes mellitus; monocular vision; asthma; obstructive sleep apnea; hypertension; morbid obesity; depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: she could occasionally stoop, reach overhead, and climb ramps and/or stairs; but never crawl, crouch, kneel, or climb ladders, ropes, and/or scaffolds. Further, she should not work around hazards such as unprotected heights or dangerous machinery and never drive automotive equipment. The [plaintiff] is limited to jobs that involve only monocular vision. She should also avoid concentrated exposure to temperature extremes or pulmonary irritants. Moreover, the [plaintiff] is capable of unskilled simple, repetitive tasks in a work environment that requires no rapid production pace work. Finally, the [plaintiff] should have only occasional contact with co-workers, supervisors, and/or the general public.

6. The [plaintiff] is unable to perform any of her past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1972 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because

---

[3]Plaintiff's past relevant work was as an assembler, data entry clerk, and clerical worker. (Tr. 33).

4

using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 28, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-34).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform a wide range of representative unskilled sedentary occupations such as bench assembler, with 500 jobs in the local economy and 85,000 jobs in the national economy; hand packer, with 500 jobs in the local economy and 110, 000 jobs in the national economy; and inspector, with 350 jobs in the local economy and 80,000 jobs in the national economy. (Tr. 33-34).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized in the plaintiff's Statement of Errors and will not be repeated here. (Doc. 12 at 2-10). Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff raises three assignments of error: (1) the ALJ improperly weighed the medical opinions of record and failed to afford sufficient weight to the opinions of plaintiff's treating orthopedist, Dr. Errol Stern, M.D.; (2) the ALJ erred by failing to consider the combined effects of plaintiff's impairments and to properly account for those impairments in the RFC finding; and (3) the ALJ erred in assessing plaintiff's credibility.

6

**1. The ALJ did not err in weighing the medical opinions of record.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The treating physician rule mandates that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing former 20 C.F.R. § 404.1527(d)(2)).[5] If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

---

[5] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d), 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. §404.1527(d)(2)). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Here, the ALJ declined to give controlling weight to the opinion of plaintiff's treating orthopedist, Dr. Stern. (Tr. 32). Dr. Stern completed a basic medical assessment form on June 17, 2010 (Tr. 744)[6], and a physical RFC assessment on June 22, 2010. (Tr. 911-916). In the basic medical assessment, Dr. Stern opined that in an eight-hour workday, plaintiff could stand/walk for a total of one hour and for 15 minutes without interruption; sit for what appears to be a total of either four hours or four to six hours[7] and for one hour without interruption; and lift up to five pounds frequently and eight to ten pounds occasionally. (Tr. 744). Dr. Stern also opined that her ability to bend was markedly limited and her ability to push/pull and reach was moderately limited. (*Id.*). In the physical RFC assessment he completed less than one week later on June 22, 2010, Dr. Stern stated he had treated plaintiff for two years, and he diagnosed her with arthritis of

---

[6]The basic medical assessment is not dated, but in his office notes from June 17, 2010, Dr. Stern stated plaintiff had brought a capacity form with her to the office visit and he had filled it out indicating he thought plaintiff was limited to "light sedentary work." (Tr. 743).

[7] Both a "4" and a "6" are written in the space for the number of hours plaintiff can sit.

the knee and obesity. (Tr. 912). He reported symptoms of severe bilateral knee pain, swelling of the knees, and difficulty walking. (*Id.*). He assessed plaintiff as capable of sitting for a total of two hours and for 30 minutes without interruption and of standing/walking for a total of less than two hours and for 15 minutes at one time during an eight-hour workday; she must be able to shift positions from sitting, standing or walking at will; she would need to take unscheduled 15-minute rest breaks; her legs must be elevated waist-high 50% of the working day on a sedentary job; she must use a cane or other assistive device when engaged in occasional standing/walking; she could rarely lift/carry ten pounds in a competitive work situation; she could never twist, stoop, crouch/squat, or climb ladders or stairs; and she was likely to be absent from work more than four days per month as a result of her impairments. (Tr. 912-16).

The ALJ did not give controlling weight to the opinion of Dr. Stern, instead placing "great weight" on the assessment of the non-examining state agency reviewing physician, Dr. Gary Hinzman, M.D., in finding that plaintiff had the physical RFC for sedentary work with certain restrictions. (Tr. 26). Dr. Hinzman completed a physical RFC assessment in August 2009 in which he assessed plaintiff as capable of lifting ten pounds frequently, standing/walking at least two hours in an eight-hour workday, sitting about six hours in an eight-hour workday, pushing/pulling an unlimited amount, occasionally climbing ramps/stairs, balancing and stooping, and never climbing ladders/ropes/scaffolds, kneeling, crouching or crawling. Dr. Hinzman also found that plaintiff's depth perception was limited, and he imposed environmental restrictions against temperature extremes; fumes, odors, dust, gases and poor ventilation; and hazards. (Tr. 559-66). Dr. Hinzman concluded plaintiff was obese and had medical problems, including musculoskeletal complaints that are impacted by her obesity, but he reported that she was able to

9

ambulate independently, her strength was intact, and the medical evidence did not show a degree of severity so as to reduce her RFC below the level of sedentary work. (Tr. 566). Dr. Hinzman set forth numerous objective and clinical findings in support of his opinion.

Plaintiff argues that the ALJ failed to comply with the applicable Social Security regulations and governing case law when he gave "great weight" to the August 6, 2009 opinion of the state agency reviewing physician, Dr. Hinzman, and "less weight" to the opinions of her treating orthopedist, Dr. Stern. (Doc. 12 at 14-17). Plaintiff asserts that Dr. Hinzman did not have the opportunity to review the entire record, and his opinion is inconsistent with the medical evidence of record. Plaintiff contends that the ALJ should have given more weight to the opinion of Dr. Stern because he is an orthopedist who treated plaintiff for several years; his opinion is supported by his objective findings, the reports of other physicians and physical therapists, and the imaging findings; and his opinion is logical and consistent with plaintiff's testimony.

The ALJ gave good reasons for declining to give controlling weight to the opinion of Dr. Stern and instead giving Dr. Stern's opinion "less weight." (Tr. 32). The ALJ determined that Dr. Stern's opinions were generally consistent with the findings set forth in the ALJ's decision, but Dr. Stern's extreme restrictions on standing/walking and sitting were not supported by the record, including the extent of degenerative changes in plaintiff's knees, the benign diagnostic and clinical findings, the minimal level of treatment plaintiff had received for her back impairment, and the fact that plaintiff was not "partially bedridden." (*Id.*).

The ALJ's reasons for discounting Dr. Stern's opinions find substantial support in the record. The only clinical and objective findings Dr. Stern listed in his reports to support the limitations he imposed were "[positive] x-ray findings." (Tr. 912). However, the x-ray findings

10

disclosed only mild degenerative arthritis. (Tr. 395- 7/08 x-rays revealed "mild degenerative changes;" Tr. 746-48- 4/10- overall x-ray impression of the bilateral knees was mild tricompartmental degenerative arthritis of bilateral knees; Tr. 957- 8/10 - overall x-ray impression was patellofemoral degenerative arthritis of bilateral knees, but severity of condition was not noted). The record does not include additional clinical or diagnostic findings that show the degenerative changes in plaintiff's knees were sufficiently severe to warrant the standing/walking and sitting restrictions Dr. Stern imposed. Although an October 2008 MRI of the left knee revealed intermediate to high-grade anterior compartment chondromalacia (Tr. 396), Dr. Stern's office notes show the condition was successfully treated with injections for an extended period before plaintiff required knee surgery. (Tr. 754- Dr. Stern noted in August 2009 that plaintiff did "really well" following an injection for knee pain one year earlier and the plan was to give her another injection; Tr. 750- Dr. Stern reported in January 2010 that plaintiff was given her third injection in both knees and was doing "really well with that;" Tr. 962-963- plaintiff underwent chondroplasty and lateral retinacular release in September 2010). There is no indication in the record that plaintiff's arthroscopic knee surgery in September 2010 was unsuccessful.

In addition, the ALJ reasonably relied on the absence of objective findings and lack of extensive treatment related to plaintiff's back impairment in determining the standing/walking and sitting restrictions imposed by Dr. Stern were unsupported. Dr. Stern did not include any findings related to plaintiff's lumbar impairment in his assessments, and the record contains few diagnostic and clinical findings related to the impairment. An MRI performed in May of 2008 disclosed degenerative disc disease, some facet arthropathy at multiple levels in the lumbar spine, and

11

L3/L4 disc protrusion/herniation causing "likely impingement of exiting L3 nerve root."[8] (Tr. 191, 382). However, physical examinations conducted over a two-year period between June 2008 and June 2010 repeatedly failed to disclose evidence of neurological or sensory deficits and yielded primarily normal findings, including a normal gait, normal strength, the ability to move all extremities without difficulty, and no tenderness. (Tr. 365, 368, 374, 516, 626, 807, 820-24). Plaintiff experienced some limited range of motion and tenderness beginning in February 2010 (Tr. 862-63, 880, 917-939), but her treatment was essentially conservative, consisting of physical therapy/aquatherapy, a TENS unit, and ice/heat, as well as injections and radiofrequency ablation beginning in March of 2010 which reportedly relieved 75% to 80% of her back pain. (Tr. 921).

Further, as the ALJ reasonably determined, if plaintiff were restricted to the extent assessed by Dr. Stern, she would necessarily be "partially bedridden," which the record did not show to be the case. (Tr. 32). Plaintiff has not pointed to evidence that substantially supports a finding she is impaired to such a degree.

Plaintiff argues the ALJ erred by failing to give controlling weight to the opinion of Dr. Stern and by giving "great weight" to the opinion of Dr. Hinzman because the ALJ did not take into consideration a number of positive findings that allegedly support Dr. Stern's opinions. Plaintiff contends that although Dr. Stern specifically referenced only plaintiff's arthritic knees (in addition to her obesity) in the assessments he provided, Dr. Stern also "would have" taken into account other conditions for which he and his colleagues treated plaintiff, including a right shoulder rotator cuff tear, mild carpal tunnel syndrome, mild C7 radiculopathy, and plantar

---

[8]Dr. Thomas Berger, M.D., of the Mayfield Clinic, who performed an examination of plaintiff at the request of another physician and reviewed the results of the MRI, opined that the herniated disc was an "over read." (Tr. 191).

fasciitis with heel spurs. (Doc. 12 at 15-16, citing Tr. 385-90, 393, 398, 754). However, this is sheer speculation on plaintiff's part as Dr. Stern referenced only plaintiff's arthritic knees and obesity and accompanying symptoms in his June 22, 2010 assessment. (Tr. 912). Dr. Stern did not identify any other conditions as contributing to plaintiff's standing/walking or sitting limitations in either of his assessments.

Plaintiff also alleges that the opinions of her other "treating physicians" are consistent with Dr. Stern's opinion and support a finding that she cannot perform full-time competitive work. (Doc. 12 at 17, citing Tr. 191- Dr. Berger[9]; Tr. 260- Dr. David Bernstein, M.D. (allergist); Tr. 850-851- Dr. Prudence Tante-Takougang, M.D.[10]). However, none of these physicians rendered an opinion as to plaintiff's functional limitations[11] or made findings indicating that plaintiff was impaired to the extent found by Dr. Stern. Plaintiff further relies on the physical therapy reports from Nova Care Rehabilitation dated April through June 2010 regarding her tolerance for standing and sitting, as well as unspecified findings in the physical therapy discharge summary, to argue that Dr. Stern's opinion is supported by the evidence of record. (Doc. 12 at 16-17, citing Tr. 664-65, 685, 695, 739-41). However, the standing and sitting limitations included in the physical therapy records appear to be based on plaintiff's self-reports, those records do not indicate an inability to sit more than one hour or stand more than two hours during an eight-hour workday,

---

[9] The record includes only one consultative report from Dr. Berger dated May 1, 2007 (prior to the alleged onset date), and there is no indication that Dr. Berger saw plaintiff more than one time. Accordingly, Dr. Berger is not properly considered a "treating physician" pursuant to 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

[10] In June 2010, Dr. Tante-Takougang reported that plaintiff's neurological examination was normal and that physical examination of plaintiff's extremities, spine, joints, and range of motion were normal.

[11] While Dr. Bernstein opined in September 2008 that Plaintiff "has decreased ability to sustain work activity," he did not specify any particular limitations on standing, walking, or sitting and stated that plaintiff's asthma should be considered along with her obesity and other impairments. (Tr. 260).

and the remaining findings in the reports do not support the limitations imposed by Dr. Stern. Thus, the ALJ did not err by failing to give controlling weight to Dr. Stern's opinion based on these reports.

In addition, plaintiff argues that the ALJ erred by relying on Dr. Hinzman's physical RFC assessment because Dr. Hinzman reviewed only a small portion of the record and did not consider 18 exhibits of record that were generated after he issued his report. (Doc. 12 at 15-17, citing Tr. 567-992). However, a review of the ALJ's decision shows the ALJ considered the medical evidence produced following the issuance of Dr. Hinzman's report, including evidence related to Dr. Stern's referral of plaintiff to Dr. Clyde E. Henderson, M.D., an orthopedic surgeon, for an orthopedic consultation in March 2010, and plaintiff's subsequent knee surgery in September of 2010. (*See* Tr. 745-49, 962-63). Substantial evidence supports the ALJ's decision that there were no clinical or imaging findings subsequent to Dr. Hinzman's report that would justify greater limitations than those imposed by Dr. Hinzman. (Tr. 32).

Accordingly, the ALJ was not bound to give controlling weight to Dr. Stern's opinion that plaintiff was precluded from performing even a restricted range of sedentary work. The ALJ thoroughly reviewed the medical evidence of record, including the evidence post-dating the assessment of Dr. Hinzman, and substantial evidence supports the ALJ's finding that there was a lack of objective evidence documenting the extreme restrictions on standing/walking and sitting imposed by Dr. Stern. The ALJ was therefore entitled to give "great weight" to the opinion of the state agency reviewing physician, Dr. Hinzman, and "less weight" to the opinion of Dr. Stern. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (state agency reviewing physicians are highly qualified physicians who are also experts in Social Security disability evaluation). For these reasons,

plaintiff has not shown that the ALJ erred in weighing the medical opinions of record. Plaintiff's first assignment of error should be overruled.

### 2. The ALJ did not err by failing to consider plaintiff's impairments in combination and by failing to properly account for the impairments in the RFC finding.

Plaintiff alleges as her second assignment of error that the ALJ failed to consider the combined impact of her impairments throughout the disability determination process in violation of the governing law and regulations. (Doc. 12 at 18, citing 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523). In assessing a claim for disability, the ALJ must analyze "the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v. Sec. of HHS*, 980 F.2d 1066, 1071 (6th Cir. 1992); *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988). This does not mean the ALJ must employ a particular "combined effects" analysis. *See Loy v. Sec. of HHS*, 901 F.2d 1306, 1310 (6th Cir. 1990). "[A]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effects of the impairments in combination. . . ." *Id.* Instead, it is sufficient for the ALJ to refer to the claimant's "impairments" (plural) and "combination of impairments." *Id.*

The ALJ determined that plaintiff suffers from the severe impairments of degenerative joint disease of the knees; lumbar spine degenerative disc disease; residuals of a right rotator cuff tear; cardiac arrhythmia; diabetes mellitus; monocular vision; asthma; obstructive sleep apnea; hypertension; morbid obesity; depression; and anxiety. (Tr. 22). Plaintiff contends that the ALJ erred by failing to take additional impairments into account and by failing to impose even greater

limitations than those set forth in his RFC determination when accounting for these impairments. Plaintiff's allegations of error are not supported by the record.[12]

First, plaintiff alleges that the ALJ failed to mention that she suffers from "gastroparesis," which purportedly causes nausea and vomiting and would therefore adversely impact plaintiff's ability to work. (Doc. 12 at 19, citing Tr. 1020-1021). However, plaintiff has not cited any medical evidence that indicates she was diagnosed with gastroparesis or that substantiates she suffered symptoms or functional limitations resulting from this condition.

Plaintiff also contends that the ALJ minimized the impact of peripheral neuropathy resulting from her diabetes, which she alleges would cause pain and numbness, limit her ability to work around hazards, and limit her ability to stand and walk for extended periods of time. (*Id.* at 19). The ALJ noted in his decision that the results of an MRI suggested possible diabetic neuropathy, but the ALJ determined that clinical findings documenting neuropathy were lacking. (Tr. 29). Plaintiff has not cited any medical evidence to show that the ALJ's finding is erroneous or that she suffered from peripheral neuropathy and resulting functional limitations.

In addition, plaintiff contends that the ALJ did not properly consider the impact of her obesity on her other impairments. Plaintiff specifically alleges that the ALJ erred in this regard by finding that her asthma was not a "severe" impairment without considering how her obesity impacts her asthma. (Doc. 12 at 20). Contrary to plaintiff's argument, the ALJ in fact found that plaintiff's asthma was a "severe" impairment and included environmental restrictions in the RFC finding to account for her respiratory problems. (Tr. 22, 26).

---

[12] Plaintiff makes no allegations of error pertaining to her mental impairments.

16

Plaintiff further contends that the ALJ improperly found that her back impairment was not disabling because there was no evidence of neural involvement. (Doc. 12 at 21, citing Tr. 26-27). Plaintiff asserts that evidence of neural involvement is not necessary to prove that a spinal impairment imposes disabling limitations. The ALJ stated that although plaintiff alleged she suffers back pain that radiates into her lower extremities, neither the diagnostic studies, clinical findings, nor course of treatment suggested a disabling impairment. (Tr. 28). In making this determination, the ALJ thoroughly reviewed the objective medical evidence regarding plaintiff's back impairment and a possible neurological component, including May 2008 MRI findings showing a possible disc herniation at L3-L4. (*Id.*, Tr. 382). The ALJ noted this was the lone lumbar imaging study contained in the record and that there was no other evidence of nerve root compression. (Tr. 28). As the ALJ thoroughly considered the evidence pertaining to plaintiff's back impairment, and substantial evidence supports his finding that plaintiff's back impairment did not impose functional limitations in addition to those included in the RFC finding, plaintiff has not shown any error in this regard.

Plaintiff also alleges that the ALJ erred by finding she could perform a restricted range of sedentary work on a full-time basis because it is logical to believe standing and walking would be excruciating due to the stress her weight puts on her joints; she would not be able to sit for an extended period of time because the extra weight in her abdominal area would increase the stress placed on the herniated disc disclosed on the lumbar MRI; and an allowance for alternating between sitting and standing would be insufficient to accommodate her because her diabetic neuropathy and knee condition cause pain while transitioning from a sitting to standing position. (Doc. 12 at 21-22). However, in addition to the lack of medical evidence confirming she suffers

17

from a herniated disc and diabetic neuropathy, plaintiff has not cited medical evidence to show that such conditions, combined with her other impairments, impose the functional limitations she now alleges. Nor has plaintiff cited any medical evidence to substantiate her allegations that her excess abdominal weight, coupled with a herniated disc, restrict her in the manner she alleges.

Finally, plaintiff contends that the ALJ did not properly account for her impairments because he misstated the evidence by: (1) failing to mention that plaintiff appeared at the hearing using a walker; (2) noting that plaintiff waited to have knee surgery until after her daughter graduated from high school; and (3) mischaracterizing the treatment she received as generally conservative in nature. (Doc. 12 at 20-21). Plaintiff has not shown that the ALJ misrepresented the record in any of these respects. First, counsel for plaintiff has not pointed to any evidence in the record documenting that plaintiff appeared at the hearing using a walker, and even assuming plaintiff did so, the ALJ's failure to mention this fact does not constitute a misstatement of the evidence as counsel asserts. Second, the evidence shows that plaintiff opted in April 2010 to postpone recommended knee surgery until September 2010 so that she could attend her daughter's graduation and go on vacation around June of 2010. (Tr. 746, 962-63). Although counsel for plaintiff may disagree with the significance the ALJ placed on plaintiff's decision to postpone surgery for these reasons, counsel's allegation that the ALJ misstated the evidence on this matter is simply incorrect. (*See* Tr. 31). Similarly, counsel for plaintiff may disagree with the ALJ's characterization of the care plaintiff has received "for complaints of allegedly disabling musculoskeletal pain" as "essentially conservative in nature" (Tr. 28), but plaintiff has not shown the ALJ misstated such evidence.

18

The ALJ's decision reflects that he considered the combined impact of plaintiff's impairments in formulating the thorough and detailed RFC finding, and there is substantial evidence in the record to support the ALJ's determination. Plaintiff's second assignment of error is not well-taken and should be overruled.

### 3. The ALJ did not err in assessing plaintiff's credibility.

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence because her impairments can reasonably be expected to produce the disabling pain she alleges. (Doc. 12 at 22-24). Plaintiff argues that the objective medical evidence shows that she suffers from chronic pain and arthritis in her upper and lower extremities, diabetes, vision problems, asthma, palpitations, depression, sleep apnea, and side effects from her medications, including dizziness, and her underlying conditions can reasonably be expected to produce her symptoms. (Doc. 12 at 23, 24). Plaintiff further contends that the ALJ improperly discounted her credibility based on evidence that has no bearing on her credibility.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

Title 20 C.F.R. §§ 404.1529, 416.529 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.529(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. The ALJ made extensive findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform sedentary work with restrictions. (Tr. 27-32). The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely

20

credible. (Tr. 27). The ALJ reasonably determined that although plaintiff alleged severe

functional limitations, diagnostic or clinical evidence to substantiate those limitations was absent

from the record. (*Id.*). The ALJ thoroughly reviewed the medical evidence in support of his

credibility finding. (Tr. 27-29). Plaintiff has not pointed to objective findings in the record that

confirm her subjective complaints and show her medical impairments are so severe they could

reasonably be expected to produce disabling pain, fatigue, or other symptoms.

In addition to the lack of objective evidence, the ALJ reasonably relied on a number of

other factors that he found were inconsistent with plaintiff's allegations of disabling impairments

and pain to find plaintiff's complaints were not credible. (Tr. 30). The ALJ noted that despite her

allegations of disabling symptoms and sleep disruption resulting from sleep apnea, pain and

restlessness, plaintiff reported sleeping six to eight hours a night. (Tr. 30, 31, citing Tr. 861, 882,

918-35). The ALJ further found that although she had depth perception problems as a result of

impaired left eye vision, plaintiff apparently continued to drive and had not sought the type of

treatment that would be expected for disabling vision problems. (Tr. 30, citing Tr. 765). In

addition, the ALJ noted plaintiff had sought little mental health treatment, she had been described

as ambivalent about such treatment, and she had failed to show for two consultative psychological

evaluations. (*Id.*, citing Tr. 350, 357). The ALJ also found there was evidence that plaintiff had

fabricated symptoms or health problems, including a myocardial infarct and left leg paralysis with

a 50% loss of leg function. (Tr. 31, citing Tr. 141-50, 193). The ALJ further reasonably relied on

plaintiff's activities of daily living, which she reported had improved as of February and April

2010 to the point where she was able to perform such activities independently, as inconsistent with

her allegations of disabling pain. (Tr. 861, 882).

21

Plaintiff argues that the ALJ nonetheless improperly discounted her credibility by finding she declined knee surgery because she wanted to go on vacation. (Doc. 12 at 23-24, citing Tr. 28). Plaintiff states there were additional reasons for delaying the surgery, she ultimately did have the surgery in September of 2010, and she continued to experience symptoms two months after the surgery. (Doc. 12 at 24). However, the ALJ noted that plaintiff eventually underwent the surgery, and he did not misstate the evidence by finding that plaintiff initially declined surgery in April 2010 for the reasons noted. (Tr. 27-28). The ALJ could reasonably deduce that plaintiff was not suffering from disabling pain and symptoms as she alleged based on her choice to postpone surgery for several months in order to go on vacation. Plaintiff also contends that the ALJ improperly relied on her criminal history, which includes a conviction for welfare fraud in the 1990s and an incident of child endangerment, to discount her credibility. (Doc. 12 at 24; Tr. 31-32, citing Tr. 356). Plaintiff argues that these matters have no bearing on her credibility. While the Court fails to perceive how a conviction for child endangerment casts doubt on the credibility of plaintiff's allegations pertaining to her claims for disability benefits, any error the ALJ committed in this regard was harmless because the ALJ conducted a thorough and otherwise proper credibility analysis in light of the objective medical evidence of record, plaintiff's reported daily activities, and other pertinent factors.

Accordingly, substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff does not suffer from disabling pain and other symptoms. Plaintiff's third assignment of error should be overruled.

22

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be AFFIRMED and this matter be closed on the docket

of the Court.

Date: ___6/13/13___

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHELLE A. BARNES,             Case No. 1:12-cv-529
    Plaintiff,                     Beckwith, J.
                                    Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).